1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARK A. GRANT,

11          Plaintiff,                    No. 2:11-cv-00360 LKK KJN PS

12      v.

13   UNITED STATES OF AMERICA,
     et al.,
14
                                          FINDINGS AND RECOMMENDATIONS
15          Defendant.
     _____/

16          Presently before the court[1] is a motion to dismiss plaintiff's fifth and sixth claims

17   for relief pursuant to Federal Rule of Civil Procedure 12(b)(6), which was filed by defendants

18   Mary Pickett and Mercury Casualty Company ("Mercury").[2]  Ms. Pickett and Mercury

19   (collectively, the "Mercury Defendants") contend that plaintiff's complaint fails to state claims

20   for invasion of privacy under California law.

21          The court heard this matter on its law and motion calendar on April 7, 2011.

22   (Minutes, Dkt. No. 24.)  Attorney Kristina L. Velarde appeared on behalf of the Mercury

23   _____

24          [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).
25
            [2]  Mercury Casualty Company asserts that it was erroneously sued as "Mercury Insurance
26   Group."

                                                1

1   Defendants.  Plaintiff, who is proceeding without counsel, failed to appear at the hearing.

2            Following the hearing, the undersigned ordered the Mercury Defendants to file a

3   supplemental brief addressing concerns raised by comments made at the hearing, and also

4   permitted plaintiff to file a response to the Mercury Defendants' supplemental brief.  (Order,

5   Apr. 8, 2011, Dkt. No. 26.)  The Mercury Defendants filed a supplemental brief, and plaintiff

6   filed a supplemental opposition.  (Dkt. Nos. 27-28.)  Although clearly not provided for by the

7   court's April 8, 2011 order, the Mercury Defendants filed a "surrebuttal" to plaintiff's

8   supplemental filing.  (Dkt. No. 29.)  Although the undersigned has considered the Mercury

9   Defendants' "surrebuttal" out of an abundance of caution, counsel for the Mercury Defendants

10  are advised to closely read the court's orders in the future and act in conformity therewith.

11           The undersigned has fully considered the parties' submissions, oral arguments,

12  and appropriate portions of the record in this case and, for the reasons that follow, recommends

13  that the Mercury Defendants' motion to dismiss be granted and that plaintiff's fifth and sixth

14  claims for relief be dismissed with prejudice.

15  I.       BACKGROUND

16           Plaintiff alleges that he is a disabled veteran "with a Department of Veterans

17  Affairs disability rating of 100 percent."  (Compl. ¶ 14.)  Plaintiff's claims arise from a traffic

18  collision involving plaintiff and Mercury's insured driver, Robert Williams, which plaintiff

19  alleges occurred on May 7, 2006, and resulted in plaintiff suffering "major injuries."  (See id.

20  ¶¶ 12, 77.)  Plaintiff alleges that he received his initial treatment for these injuries at "the

21  University of California Davis Medical Facility and there after . . . sought treatment from the

22  defendant Department of Veterans Affairs; Veterans Administration San Francisco Veterans

23  Administration Medical Center."  (Id. ¶ 13 (emphasis omitted).)  He alleges that the "Department

24  of Veterans Affairs; Veterans Administration San Francisco Veterans Administration Medical

25  Center is a medical facility operating under defendant United States of America, Department of

26  Veterans Affairs" in San Francisco, California.  (Id. ¶ 7.)

2

Relevant to the alleged disclosures that give rise to plaintiff's claims against the Mercury Defendants, plaintiff alleges that defendant Mary Pickett was, during the relevant period, a "Litigation Specialist and/or employee/agent for" Mercury.  (Compl. ¶ 11.) Additionally, plaintiff alleges that during the relevant period, defendant Darrell M. McDonald was, or was acting as, an employee, paralegal, or agent for the "Department of Veterans Affairs; Veterans Affairs Administration San Francisco Veterans Administration Medical Center."  (Id. ¶ 8 (emphasis omitted).)

Plaintiff alleges that on or about August 5, 2009, Mercury and Ms. Pickett contacted Mr. McDonald and requested that Mr. McDonald "provide defendant with plaintiff's personal, confidential and individually identifiable health information without authorization." (Compl. ¶ 78.)  He alleges that defendants including Mr. McDonald "complied with said request without objection."  (Id.)  Specifically, plaintiff alleges that on or about August 5, 2009, Mr. McDonald "knowingly obtained and/or intentionally or willfully disclosed [plaintiff's] individually identifiable health information."  (Id. ¶ 25.)  He further alleges that Mr. McDonald "intentionally or willfully transferred [plaintiff's] personal, confidential and individually identifiable health information to" Mercury and Ms. Pickett, and did so without plaintiff's written consent or "any other lawful process."  (See id. ¶¶ 26-27, 47-49, 63.)  Plaintiff alleges that at least some of the disclosed health information was unrelated to his treatment for injuries suffered as a result of the May 2006 traffic collision.  (Id. ¶¶ 37, 47-49, 63.)  Moreover, plaintiff alleges that this information was obtained from a state agency or a system of records maintained by a federal government agency, ostensibly the Department of Veterans Affairs.  (See id. ¶ 47.)

Plaintiff alleges that once Mr. McDonald transferred plaintiff's health information to Mercury and Ms. Pickett, Ms. Pickett further disclosed that information on Mercury's behalf to Mercury's legal counsel, John P. Hallisy, "who later gave copies to plaintiff Mark A. Grant." (Compl. ¶ 79; see also id. ¶¶ 89, 92.)  Plaintiff alleges that the Mercury Defendants "illegally invaded [plaintiff's] privacy, with the purpose of using plaintiff's personal, confidential and

3

individually identifiable health information to defeat plaintiff's claim for compensation against their insured and to force settlement of plaintiff's personal injury claim for their insured's policy limit of $15,000.00 which was a fraction of the damages suffered by plaintiff and claimed by plaintiff." (Id. ¶ 80.)  It appears from the complaint that plaintiff had been pursuing a personal injury claim in the Superior Court of California, County of Sacramento, which proceeded under case number "34-2008-00002729." (See id. ¶ 22; see also id. ¶¶ 85, 93.)

Plaintiff alleges that on September 17, 2009, he learned of Mr. McDonald's disclosure of plaintiff's medical records and, that same evening, faxed a letter to Mr. McDonald complaining about Mr. McDonald's acts. (See Compl. ¶ 98.)  He further alleges that on September 18, 2009, he called Mr. McDonald about the disclosure, and Mr. McDonald sent plaintiff a reply letter that same day. (Id. ¶ 99.)  The contents of those communications are not material to the Mercury Defendants' pending motion to dismiss.  Plaintiff alleges that on or about September 18, 2009, he signed a document called "Release of All Claims," which was presented to plaintiff by Mercury and apparently settled plaintiff's accident-related claim against Mercury's insured driver, Mr. Williams. (See id. ¶ 16.)  Attached as Exhibit A to plaintiff's complaint is a notice of settlement and request for dismissal filed by plaintiff on September 18, 2009, in Sacramento Superior Court case number 34-2008-00002729. (Compl., Ex. A.)

On February 9, 2011, plaintiff filed his complaint in this court, alleging six express claims for relief. (Compl., Dkt. No. 1.)  The Mercury Defendants are only named in the fifth and/or sixth claims for relief.  Plaintiff's fifth claim for relief is a claim of "Invasion of Privacy" and is alleged against both Ms. Pickett and Mercury. (See Compl. ¶¶ 74-85.)  Generally, it alleges that the Mercury Defendants "intentionally or willfully intruded upon plaintiff Mark A. Grant's solitude, seclusion or private affairs and concerns without lawful process or plaintiff's consent expressed or implied." (Id. ¶ 76.)  Plaintiff's sixth claim for relief is alleged only against Ms. Pickett and alleges a statutory claim for "Invasion of Privacy" pursuant to California Civil Code § 1798.53. (See id. ¶¶ 86-95.)  As to each claim, plaintiff

4

1   seeks $10,000,000 in general damages, $22,661.87 in special damages, and costs.  (See id. at 25-

2   26.)  In regards to his sixth claim for relief, plaintiff also seeks statutorily authorized exemplary

3   or punitive damages against Ms. Pickett in an amount of $100,000,000, but not less than $2,500.[3]

4   (Id. at 26.)

5           On March 7, 2011, the Mercury Defendants filed a motion to dismiss pursuant to

6   Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss plaintiff's fifth and sixth claims for

7   relief.  (Dkt. No. 8.)  On March 21, 2011, plaintiff filed a timely written opposition.  (Pl.'s Opp'n

8   to Mot. to Dismiss, Dkt. No. 17.)  And as noted above, the court held a hearing on the Mercury

9   Defendants' motion and subsequently ordered additional briefing.

10  II.    LEGAL STANDARDS

11          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

12  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

13  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

14  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

15  plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

16  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053

17  (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

18  allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

19  face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v.

20  Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads

21  factual content that allows the court to draw the reasonable inference that the defendant is liable

22  for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812

23

24          [3]  Regarding exemplary damages, California Civil Code § 1798.53 provides: "In any
25  successful action brought under this section, the complainant, in addition to any special or general
    damages awarded, shall be awarded a minimum of two thousand five hundred dollars ($2,500) in
    exemplary damages as well as attorney's fees and other litigation costs reasonably incurred in the
26  suit."

(9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).  The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved").

            In ruling on a motion to dismiss pursuant to Rule 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see, e.g., Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice.") (citing Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

////

////

III.     DISCUSSION

Before turning to the merits of the Mercury Defendants' motion to dismiss, the undersigned briefly addresses two issues.  First, buried in plaintiff's opposition to the Mercury Defendants' motion to dismiss is plaintiff's perfunctory and procedurally improper motion for summary judgment as to his sixth claim for relief, brought pursuant to Federal Rule of Civil Procedure 56.  (See Pl.'s Opp'n to Mot. to Dismiss at 7-8, 17.)  Plaintiff's motion for summary judgment does not conform with the procedural standards set forth in the Federal Rules of Civil Procedure and this court's Local Rules.  Accordingly, the undersigned summarily disregards plaintiff's motion for summary judgment as procedurally improper.

Second, plaintiff repeatedly requests that the court impose sanctions on the Mercury Defendants and their counsel pursuant to Federal Rule of Civil Procedure 11.  (See Pls.' Opp'n ¶¶ 2, 4, 5, 6, 7, 11, 12, and p. 17.)  Plaintiff has presented no legitimate factual or legal basis for the imposition of such sanctions, and, accordingly, the undersigned summarily denies plaintiff's requests for Rule 11 sanctions.

A.     Plaintiff's Fifth Claim for Relief for "Invasion of Privacy"

Turning to plaintiff's claims at issue here, plaintiff's fifth claim asserts a claim of "Invasion of Privacy."  (See Compl. ¶¶ 74-85.)  As recognized by the California Supreme Court, California common law generally recognizes four types of acts that can give rise to a claim of invasion of privacy: "(1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness."  See Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 24, 865 P.2d 633, 647 (1994); accord Forsher v. Bugliosi, 26 Cal. 3d 792, 808, 608 P.2d 716, 725 (1980) ("Our courts have dealt with four distinct factual settings under the heading of invasion of privacy.").  California's Constitution also provides for a right to privacy that, if violated under certain circumstances, may provide a claim for invasion of privacy.  See Hill, 7 Cal. 4th at 20, 865 P.2d at 845 (holding that "the Privacy Initiative in article I, section 1 of the California Constitution

7

1    creates a right of action against private as well as government entities.").  Although it is unclear

2    from plaintiff's complaint which precise common law theory or theories plaintiff intends to

3    invoke, the undersigned addresses two colorable common law theories of invasion of privacy: an

4    intrusion into private matters, and the public disclosure of private facts.[4]  And although it is also

5    unclear from plaintiff's complaint whether plaintiff intends to assert a violation under

6    California's Constitution, the undersigned addresses such a potential claim.  Additionally, the

7    undersigned addresses the parties' arguments, raised primarily in the briefing on the pending

8    motion, regarding whether Mercury Defendants' violated California Insurance Code § 791.13.

9                           1.    Invasion of Privacy Via A Public Disclosure of Private Facts

10                   Plaintiff's fifth claim for relief could be construed as attempting to allege a claim

11   for invasion of privacy as a result of the Mercury Defendants' public disclosure of plaintiff's

12   private, confidential health information.  Indeed, in their motion the Mercury Defendants

13   construed plaintiff's claim as asserting a claim based on the public disclosure of private facts, to

14   the exclusion of the various other types of invasion of privacy theories.  (See Defs.' Memo. of P.

15   & A. In Supp. of Mot. to Dismiss at 5-6.)  The Mercury Defendants argue that plaintiff cannot

16   state a claim for invasion of privacy based on the public disclosure of private facts because

17   plaintiff "fails to identify the precise subject of the protected privacy, nor a dissemination to the

18   public of the allegedly privacy protected infromation [sic]."  (Defs.' Memo. of P. & A. In Supp.

19   of Mot. to Dismiss at 5.)

20                   "The elements of a claim of invasion of privacy based on the public disclosure of

21

22          [4]  Plaintiff was not obligated to expressly identify the precise theory supporting his invasion
     of privacy claim so long as plaintiff appraised defendants of the nature of the violation.  See Jacobson
23   v. Schwarzenegger, 357 F. Supp. 2d 1198, 1218 (C.D. Cal. 2004) (concluding that plaintiff's failure
     to expressly identify which theory of invasion of privacy was at issue did not, by itself, warrant
24   dismissal) (citing Sagano v. Tenorio, 384 F.3d 731, 736-37 (9th Cir. 2004) ("A party need not plead
     specific legal theories in the complaint, so long as the other side receives notice as to what is at issue
25   in the case."), and Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories
     need not be pleaded so long as sufficient factual averments show that the claimant may be entitled
26   to some relief.")).

private facts are as follows: (1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern. . . ." Catsouras v. Dep't of Cal. Highway Patrol, 181 Cal. App. 4th 856, 868, 104 Cal. Rptr. 3d 352, 361 (Ct. App. 2010) (quotations marks omitted) (quoting Shulman v. Group W Prods., Inc., 18 Cal. 4th 200, 214, 955 P.2d 469 (1998)); see also Forsher, 26 Cal. 3d at 808-09, 608 P.2d at 725.  As to the first element of such a claim, "the disclosure of private facts must be a *public disclosure*."  Forsher, 26 Cal. 3d at 808, 608 P.2d at 725.  In Porten v. University of San Francisco, 64 Cal. App. 3d 825, 134 Cal. Rptr. 839 (Ct. App. 1976), cited approvingly by the California Supreme Court in Forsher, the California Court of Appeal stated that "'[t]he disclosure of the private facts must be a public disclosure, and not a private one; there must be, in other words, publicity.'"  Porten, 64 Cal. App. 3d at 828, 134 Cal. Rptr. at 841 (modification in original) (quoting Prosser, Torts § 117, p. 810 (4th ed.)).  The Court of Appeal further stated that "[e]xcept in cases of physical intrusion, the tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few."  Id. at 828, 134 Cal. Rptr. at 841 (citing Schwartz v. Thiele, 242 Cal. App. 2d 799, 805, 51 Cal. Rptr. 767 (Ct. App. 1966)); accord Kinsey v. Macur, 107 Cal. App. 3d 265, 270, 165 Cal. Rptr. 608, 611 (Ct. App. 1980).

As an initial matter, plaintiff suggests in his written opposition that his invasion of privacy claim is not premised on the theory that the Mercury Defendants invaded plaintiff's privacy by publicly disclosing plaintiff's private health information.  In addressing the Mercury Defendants' arguments, plaintiff states that "plaintiff's claim against defendants Mercury and/or Mary Picket [*sic*] is a defendant's violation of plaintiff's **PRIVACY RIGHT OF SECRECY**, the right to prevent disclosure of personal information to others."  (Pl.'s Opp'n to Mot. to Dismiss ¶ 9; see also id. ¶ 8 ("In response to defendants allegations . . . , to support a claim of invasion of privacy publication is not necessary.").)  Thus, plaintiff's written opposition indicates that plaintiff is not pursuing a claim of invasion of privacy on a theory of public disclosure of

9

1   private facts.

2          For the sake of completeness, however, the undersigned addresses the Mercury

3   Defendants' two bases for seeking the dismissal of plaintiff's invasion of privacy claim.  As

4   stated above, the Mercury Defendants first argue that plaintiff's complaint "fails to identify the

5   precise subject of the protected privacy." (Defs.' Memo. of P. & A. In Supp. of Mot. to Dismiss

6   at 5.)  This argument is meritless in that the subject of the privacy interest at stake is abundantly

7   clear.  Plaintiff alleges that his private medical records and health information were disclosed

8   without his consent or through the use of any other legal process.  The Mercury Defendants'

9   conclusory argument to the contrary is unpersuasive.

10          The Mercury Defendants also argue that plaintiff cannot state a claim for invasion

11  of privacy under a public disclosure of private facts theory because plaintiff has not satisfactorily

12  alleged that the Mercury Defendants publicly disclosed plaintiff's health information.  (Defs.'

13  Memo. of P. & A. In Supp. of Mot. to Dismiss at 5-6.)  Their argument is well-taken to the extent

14  that plaintiff intends to pursue such a theory.  Although there is no specific threshold number of

15  persons to whom a private fact must be disclosed before such disclosure constitutes an actionable

16  invasion of privacy, California case law provides that an actionable disclosure must in most

17  instances be tantamount to publicity.  Here, plaintiff only alleges that the Mercury Defendants

18  disclosed plaintiff's health information to Mercury's attorney, Mr. Hallisy, who then sent copies

19  of the records to plaintiff.  (Compl. ¶ 79.)  There are no allegations in the complaint suggesting

20  that the Mercury Defendants or Mr. Hallisy further disclosed plaintiff's private information.  The

21  Mercury Defendants' disclosure to Mr. Hallisy, and especially Mr. Hallisy's subsequent

22  disclosure to plaintiff, do not constitute the types of public disclosures that support a common

23  law claim of invasion of privacy based on the public disclosure of private facts theory.

24  Accordingly, plaintiff's invasion of privacy claim fails to the extent that it is premised on a

25  theory of the public disclosure of private facts.

26  ////

2.    Invasion of Privacy Via An Act of Intrusion

Plaintiff's written opposition suggests that plaintiff is pursuing a claim of invasion of privacy premised on an alleged intrusion of plaintiff's private places, conversations, or matter. (See Pl.'s Opp'n to Mot. to Dismiss ¶¶ 8-9.)  Plaintiff's complaint supports such an assertion in that plaintiff alleges that the Mercury Defendants "intentionally or willfully intruded upon plaintiff Mark A. Grant's solitude, seclusion or private affairs and concerns without lawful process or plaintiff's consent expressed or implied."  (Compl. ¶ 76.)  The Mercury Defendants' memorandum in support of their motion to dismiss does not address this theory of common law invasion of privacy.  Their reply brief similarly does not address an "intrusion" theory of invasion of privacy.  However, the Mercury Defendants addressed this theory at the hearing and in their supplemental briefing.

With respect to a common law claim of invasion of privacy premised on an intrusion into private places, conversations, or matter, the California Supreme Court has held "the action for intrusion has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." Shulman, 18 Cal. 4th at 231, 955 P.2d at 490; accord Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 286, 211 P.3d 1063, 1072 (2009); Sanders v. Am. Broadcasting Cos., 20 Cal. 4th 907, 914, 978 P.2d 67, 71 (1999).  In regards to the first element, the California Supreme Court has held that "[t]o prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." Shulman, 18 Cal. 4th at 232, 955 P.2d at 490.  As to the second element of an intrusion claim, "[t]he tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." Id., 955 P.2d at 490.  The California Supreme Court has further stated that "[t]he second common law element essentially involves a 'policy' determination as to whether the alleged intrusion is 'highly offensive' under the particular circumstances," and "[r]elevant factors include the degree and setting of the intrusion, and the

1   intruder's motives and objectives." <u>Hernandez</u>, 47 Cal. 4th at 287, 211 P.3d at 1073.

2   California's high court has further stated that this "cause of action recognizes a measure of

3   personal control over the individual's autonomy, dignity, and serenity," and that the "gravamen is

4   the mental anguish sustained when both conditions of liability exist." <u>Id.</u> at 286, 211 P.3d

5   at 1072.

6           Here, plaintiff has alleged a prima facie case of invasion of privacy based on an

7   intrusion into plaintiff's private matters.  As to the first element, plaintiff alleges that Mercury

8   and Ms. Pickett "obtained unwanted access to data" about plaintiff in the form of plaintiff's

9   confidential health information and medical records.  Plaintiff alleges that the Mercury

10  Defendants requested plaintiff's health information and medical records from Mr. McDonald

11  without consent or other authorization, and that the Mercury Defendants then disclosed that

12  material to Mr. Hallisy.  Plaintiff's allegations sufficiently allege that the Mercury Defendants

13  obtained unwanted access to health data about plaintiff, including health information unrelated to

14  the underlying traffic collision that gave rise to plaintiff's injuries.

15          Regarding the second element, plaintiff has alleged facts that demonstrate, at least

16  for the purpose of a pleading-based motion, that the intrusion effectuated by the Mercury

17  Defendants was highly offensive to a reasonable person.  As a matter of common sense, the

18  unwanted and unauthorized access to one's medical records by a third party is highly offensive to

19  a reasonable person.  Moreover, plaintiff alleges that he had a reasonable expectation that his

20  health information and medical records would be kept private.  Plaintiff also alleges that the

21  intrusion at issue was made to gain leverage in the settlement of pending litigation.

22          Although plaintiff has alleged a prima facie case of invasion of privacy under a

23  theory of intrusion, however, the Mercury Defendants are immunized from such a tort claim on

24  the basis of California's absolute litigation privilege.  California's litigation privilege, contained

25  in California Civil Code § 47(b), provides, in part, that a publication or broadcast made as part of

26  a judicial proceeding is privileged.  <u>See also</u> <u>Action Apartment Ass'n, Inc. v. City of Santa</u>

1  <u>Monica</u>, 41 Cal. 4th 1232, 1241, 163 P.3d 89, 95 (2007).  The California Supreme Court

2  summarized this litigation privilege as follows:

3            This privilege is absolute in nature, applying to all publications,
           irrespective of their maliciousness.  The usual formulation is that the
4            privilege applies to any communication (1) made in judicial or
           quasi-judicial proceedings; (2) by litigants or other participants authorized
5            by law; (3) to achieve the objects of the litigation; and (4) that [has] some
           connection or logical relation to the action.  The privilege is not limited to
6            statements made during a trial or other proceedings, but may extend to
           steps taken prior thereto, or afterwards.

7

8  <u>Id.</u> (citations and internal quotation marks omitted, modification in original).  California's

9  highest court has given this privilege "a broad interpretation" in furtherance of the purpose of the

10  privilege, which is "to afford litigants and witnesses . . . the utmost freedom of access to the

11  courts without fear of being harassed subsequently by derivative tort actions."  <u>Id.</u>  Although the

12  privilege was originally enacted with reference to claims of defamation, "'the privilege is now

13  held applicable to any communication, whether or not it amounts to a publication . . . , and all

14  torts except malicious prosecution.'"  <u>Rusheen v. Cohen</u>, 37 Cal. 4th 1048, 1057, 128 P.3d 713,

15  718 (2006) (quoting <u>Silberg v. Anderson</u>, 50 Cal. 3d 205, 212, 786 P.2d 365 (1990)); <u>see also</u>

16  <u>Action Apartment Ass'n, Inc.</u>, 41 Cal. 4th at 1241-42 (noting that the litigation privilege applies

17  to claims of slander, libel, and abuse of process, among other types of claims).  The California

18  Supreme Court has expressly held that the litigation privilege applies to common law, statutory,

19  and constitutional claims of invasion of privacy.  <u>Jacob B. v. County of Shasta</u>, 40 Cal. 4th 948,

20  962, 154 P.3d 1003, 1012 (2007) ("Section 47(b)'s litigation privilege bars a privacy cause of

21  action whether labeled as based on common law, statute, or Constitution.").  The privilege

22  applies "regardless whether the communication was made with malice or the intent to harm" and

23  "does not depend on the publisher's motives, morals, ethics or intent."  <u>Kashian v. Harriman</u>,98

24  Cal. App. 4th 892, 913, 120 Cal. Rptr. 2d 576, 592 (Ct. App. 2002) (citation and quotation marks

25  omitted).  Moreover, "where the gravamen of the complaint is a privileged communication . . .

26  the privilege extends to necessarily related noncommunicative acts. . . ."  <u>Rusheen</u>, 37 Cal. 4th at

1    1062, 128 P.3d at 722.  "Any doubt as to whether the privilege applies is resolved in favor of

2    applying it."  Adams v. Superior Court, 2 Cal. App. 4th 521, 529, 3 Cal. Rptr. 2d 49, 53 (Ct.

3    App. 1992); accord Lambert v. Carneghi, 158 Cal. App. 4th 1120, 1138, 70 Cal. Rptr. 3d 626,

4    639 (Ct. App. 2008); Obos v. Scripps Psychological Assocs., Inc., 59 Cal. App. 4th 103, 108, 69

5    Cal. Rptr. 2d 30, 33 (Ct. App. 1997).

6              There are two acts identified in the complaint that potentially give rise to

7    plaintiff's intrusion claim: (1) Ms. Pickett's alleged act of requesting access to the records at

8    issue, which led to the transfer of the records; and (2) Ms. Pickett's alleged transfer of those

9    records to Mr. Hallisy, Mercury's counsel, so that the records could be returned to plaintiff.  Both

10   of these acts, which are fairly characterized as communications or related non-communicative

11   acts, are absolutely privileged because they were done in the course of litigation brought by

12   plaintiff in the Sacramento Superior Court relating to the underlying traffic collision.  Indeed,

13   plaintiff alleges that the Mercury Defendants "illegally invaded [plaintiff's] privacy, with the

14   purpose of using plaintiff's personal, confidential and individually identifiable health information

15   to defeat plaintiff's claim for compensation against their insured and to force settlement of

16   plaintiff's personal injury claim for their insured's policy limit of $15,000.00 which was a

17   fraction of the damages suffered by plaintiff and claimed by plaintiff."  (Id. ¶ 80.)  Thus, the acts

18   at issue are strongly related to the state court litigation.  Although the communications or related

19   non-communicative acts by Ms. Pickett vis-a-vis Mr. McDonald and Mr. Hallisy did not

20   technically occur during a "judicial proceeding," they were made in connection with ongoing

21   litigation and, as plaintiff alleges, to facilitate the settlement of that litigation.  Thus, these

22   communications or related non-communicative acts are absolutely privileged under California

23   Civil Code § 47(b).  See Hagberg v. Cal. Fed. Bank, FSB, 32 Cal. 4th 350, 361, 81 P.3d 244, 249

24   (2004) ("In its application to communications made in a "judicial proceeding," section 47(b) is

25   not limited to statements made in a courtroom."); Heller v. Norcal Mut. Ins. Co., 8 Cal. 4th 30,

26   45, 876 P.2d 999, 1007 (1994) ("We have consistently held that communications occurring

during the course of litigation are absolutely privileged under section 47(b) and cases interpreting the statute."); see also, cf., GeneThera, Inc. v. Troy & Gould Prof. Corp., 171 Cal. App. 4th 901, 909-10, 90 Cal. Rptr. 3d 218, 223-24 (Ct. App. 2009) (holding that a letter sent in furtherance of settlement among litigants and counsel was subject to California's absolute privilege); Passman v. Torkan, 34 Cal. App. 4th 607, 613-14, 40 Cal. Rptr. 2d 291, 295 (Ct. App. 1995) (noting that the appellants conceded that a letter sent by a client to his attorney that was related to the lawsuit satisfied the requirement that it be made in a judicial proceeding).  Accordingly, the undersigned recommends that plaintiff's fifth claim be dismissed with prejudice to the extent that it alleges a claim for invasion of privacy based on an intrusion theory.

### 3.   Invasion of Privacy Under the California Constitution

Although it is somewhat unclear from the allegations supporting plaintiff's fifth claim for relief whether plaintiff intends to seek relief for a violation of his right of privacy under the California Constitution, plaintiff alleges an invasion of privacy generally and asserts that the "right of privacy is protected by the California Constitution, Article I, Section 1."[5]  (See Compl. ¶ 18; see also id. ¶¶ 76-84.)  As a result, the undersigned addresses whether plaintiff has stated a claim for the invasion of his privacy rights under the California Constitution.

Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  The California Supreme Court has held that "the Privacy Initiative in article I, section 1 of the California Constitution creates a right of action against private as well as government entities."  Hill, 7 Cal. 4th at 20, 865 P.2d at 644.

There are three elements of a prima facie claim for invasion of privacy under the

---

[5]  Plaintiff's written opposition does not expressly argue that plaintiff is pursuing a claim under the California Constitution.  However, it generally sets forth the legal standards applicable to such a claim.  (Pl.'s Opp'n to Mot. to Dismiss at 15-16.)

California Constitution.  "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."  Hill, 7 Cal. 4th at 39-40, 865 P.2d at 657; accord Hernandez, 47 Cal. 4th at 287, 211 P.3d at 1073.  As to the first element, a legally protected privacy interest will generally fall into two classes: "(1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')."  Hill, 7 Cal. 4th at 35, 865 P.2d at 654.  As to the second element, "[a] 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms."  Id. at 37, 865 P.2d at 655; see also Hernandez, 47 Cal. 4th at 287, 211 P.3d at 1073 ("This element rests on an examination of customs, practices, and physical settings surrounding particular activities, as well as the opportunity to be notified in advance and consent to the intrusion.") (citation and quotation marks omitted).  Regarding the third element, "the plaintiff must show that the intrusion is so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms."  Hernandez, 47 Cal. 4th at 287, 211 P.3d at 1073 (citation and quotation marks omitted).

        The undersigned concludes that even assuming plaintiff satisfactorily alleged a claim of invasion of privacy under the California Constitution, plaintiff's constitutional claim is barred by California's absolute litigation privilege.  The same communications and related non-communicative acts that underlie plaintiff's "intrusion" theory of invasion of privacy under the common law are implicated by plaintiff's claim under the California Constitution.  As discussed above, those acts are privileged.  And the California Supreme Court has held that "Section 47(b)'s litigation privilege bars a privacy cause of action whether labeled as based on common law, statute, or Constitution."  Jacob B., 40 Cal. 4th at 962, 154 P.3d at 1012.

1    Accordingly, the undersigned recommends that plaintiff's fifth claim for relief be dismissed with

2    prejudice to the extent it alleges a violation of plaintiff's privacy rights under the California

3    Constitution.

4                  4.     <u>Invasion of Privacy Under California Insurance Code § 791.13</u>

5             Although not referenced in plaintiff's complaint, plaintiff contends in his written

6    opposition that the Mercury Defendants are liable for violations of California Insurance Code

7    § 791.13 based on the same predicate acts discussed above.  (<u>See</u> Pl.'s Opp'n to Mot. to Dismiss

8    at 3.)  Even assuming that such a claim is properly before the court, it is similarly barred by

9    California's litigation privilege.  The California Supreme Court has held that the litigation

10   privilege bars claims of invasion of privacy that are statutory in nature where the damages

11   available are actual, monetary damages and not a statutory award of damages.  <u>See</u> <u>Ribas v.</u>

12   <u>Clark</u>, 38 Cal. 3d 355, 364-65, 696 P.2d 637, 643-44 (1985) (holding that California Civil Code

13   § 47(b) barred a claim of invasion of privacy premised on a criminal eavesdropping statute to the

14   extent that the claim sought actual damages, but did not bar a claim for automatically authorized

15   statutory damages); <u>see also</u> Jacob B., 40 Cal. 4th at 960, 154 P.3d at 1011 (noting the

16   applicability of the privilege to statutory claims of invasion of privacy); <u>Rubin v. Green</u>, 4 Cal.

17   4th 1187, 1193, 847 P.2d 1044, 1047 (1993) (holding that plaintiff could not avoid the litigation

18   privilege simply by pleading an otherwise barred tort claim as a violation of California's unfair

19   competition statute).  The damages available for a violation of California Insurance Code

20   § 791.13 are limited to actual damages.  <u>See</u> Cal. Ins. Code § 791.20(b).  Accordingly, plaintiff's

21   invasion of privacy claim should be dismissed with prejudice to the extent it is premised on

22   California Insurance Code § 791.13.

23            B.    <u>Plaintiff's Sixth Claim for Relief (Violation of Cal. Civ. Code § 1798.53)</u>

24             Plaintiff's sixth claim for relief, asserted only against Ms. Pickett, alleges a

25   violation of plaintiff's privacy rights pursuant to California Civil Code § 1798.53.  Plaintiff

26   alleges that Ms. Pickett, in her official capacity as an employee of Mercury, illegally obtained

1   and intentionally disclosed "plaintiff's personal, confidential and individually identifiable health

2   information" to Mercury's attorney, John P. Hallisy, without plaintiff's consent or lawful

3   process.  (<u>See</u> Compl. ¶¶ 79, 89, 92.)

4          Section 1798.53, which is part of California's Information Privacy Act of 1977,

5   provides in pertinent part:

6              Any person, other than an employee of the state or of a local government
               agency acting solely in his or her official capacity, who intentionally
7              discloses information, not otherwise public, which they know or should
               reasonably know was obtained from personal information maintained by a
8              state agency or from "records" within a "system of records" (as these
               terms are defined in the Federal Privacy Act of 1974 (P.L. 93-579;
9              5 U.S.C. 552a)) maintained by a federal government agency, shall be
               subject to a civil action, for invasion of privacy, by the individual to whom
10             the information pertains.

11  Cal. Civ. Code § 1798.53; <u>see also</u> <u>Anti-Defamation League of B'nai B'rith v. Superior Court</u>, 67

12  Cal. App. 4th 1072, 1078-79, 79 Cal. Rptr. 2d 597, 600 (Ct. App. 1998) ("Civil Code section

13  1798.53 is part of the Information Practices Act of 1977, which generally imposes limitations on

14  the right of governmental entities to disclose personal information about an individual.").  As

15  stated by one California Court of Appeal, "[t]he statute was designed by the Legislature to

16  prevent misuse of the increasing amount of information about citizens which government

17  agencies amass in the course of their multifarious activities, the disclosure of which could be

18  embarrassing or otherwise prejudicial to individuals or organizations."  <u>Anti-Defamation League</u>

19  <u>of B'nai B'rith</u>, 67 Cal. App. 4th at 1079, 79 Cal. Rptr. 2d at 600.

20         In their initial moving papers, the Mercury Defendants move to dismiss plaintiff's

21  sixth claim on two rather unsupported grounds.  First, the Mercury Defendants tersely argue that

22  plaintiff failed "to establish, or even allege, that the VA Medical Center is indeed a federal

23  government 'agency,' as opposed to a medical healthcare provider for purposes of maintaining

24  records." (Defs.' Memo. of P. & A. In Supp. of Mot. to Dismiss at 6.)  The Mercury Defendants

25  offer no authority for the proposition that the court can or must parse plaintiff's Section 1798.53

26  claim so finely.  The U.S. Department of Veterans Affairs is doubtlessly a federal government

agency, and plaintiff alleges that the health information at issue was maintained in a system of records within that agency.  Without more from the Mercury Defendants, the undersigned is unpersuaded that plaintiff is required to allege that a specific Veterans Affairs medical center is a federal government agency for the purpose of evaluating a claim under California Civil Code § 1798.53.

Second, the Mercury Defendants argue in conclusory fashion that plaintiff failed to "allege or establish that such records are kept within a 'system of records' as is required to succeed on this cause of action."  (Defs.' Memo. of P. & A. In Supp. of Mot. to Dismiss at 6.) Although the Mercury Defendants offer no authority suggesting a definition of the statutory terms at issue, California Civil Code § 1798.53 directs the reader to the Federal Privacy Act, 5 U.S.C. § 552a, to ascertain the definition of the terms "record" and "system of records."

Pursuant to the Federal Privacy Act, "the term 'record' means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, *medical history*, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4) (emphasis added).  Additionally, that act defines "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  Id. § 552a(a)(5).

Here, plaintiff satisfactorily alleges that the health information disclosed by the Mercury Defendants in this case constitute "records" within the meaning of California Civil Code § 1798.53 and 5 U.S.C. §552a(a)(4).  At a minimum, plaintiff alleges that the information or documents disclosed include plaintiff's individually identifiable health information, including medical records, prescription information, and billing records, all of which were maintained by the U.S. Department of Veterans Affairs.  (See Compl. ¶¶ 26-28, 37, 41-42, 77-78, 80, 84-85, 89,

92-93.)  Furthermore, plaintiff expressly alleges, albeit in somewhat conclusory form, that the records at issue were maintained in a "system of records."  (See, e.g., id. ¶¶ 89, 92.) Additionally, plaintiff alleges that the records obtained by Ms. Pickett from Mr. McDonald, an employee of the U.S. Department of Veterans Affairs, were under the control of a federal agency, and were individually identifiable.  (See id. ¶¶ 25-26, 89, 92.)  Thus, plaintiff's allegations meet the plain, statutory definition of "system of records" provided in 5 U.S.C. § 552a(a)(5), and the Mercury Defendants offer nothing to rebut this common sense reading of the statute and plaintiff's allegations.  The arguments offered by the Mercury Defendants in their initial moving papers are entirely unpersuasive.

In their reply papers, the Mercury Defendants appeared to abandon their original, failing arguments and offered a new set of arguments in support of their motion to dismiss plaintiff's Section 1798.53 claim.  First, they argue that plaintiff has failed to allege facts that meet a purported "public disclosure" requirement contained in California Civil Code § 1798.53. (Reply Br. at 4, Dkt. No. 19.)  Specifically, the Mercury Defendants argue that Section 1798.53's requirement that the information disclosed be "not otherwise public" suggests that "the passing on of such information is making such information 'public.'"  (Id.)  The argument continues that the disclosure by Ms. Pickett to Mercury's counsel cannot constitute a disclosure that makes the information public.  (Id.)  This argument is supported by no legal authority in the reply brief. And although the Mercury Defendants state that their argument is "supported by case law in the moving papers," they cited no case law in their initial moving papers insofar as plaintiff's Section 1798.53 is concerned.[6]  Once again, the undersigned finds that the Mercury Defendants would have the court parse the statute too finely.  The plain language of the statute does not support the Mercury Defendants' "suggestion" that the disclosure of private health information to

---

[6]  In their initial moving papers, the Mercury Defendants addressed plaintiff's Section 1798.53 claim in the span of approximately 11 lines of text, and only cited to the statute itself.

1   one's attorney falls outside of the scope of Section 1798.53 as a matter of law.

2   　　　　Second, the Mercury Defendants argue that Ms. Pickett's disclosure of plaintiff's

3   private health information to Mr. Hallisy is protected by California's litigation privilege

4   contained in California Civil Code § 47(b) because it constituted a communication with

5   Mercury's attorney in connection with pending litigation.  (Defs.' Reply Br. at 4-5.)  This

6   argument is well-taken.  As stated above as to plaintiff's fifth claim for relief, Ms. Pickett's

7   disclosure of plaintiff's private health information was to Mercury's attorney and was made in

8   connection with state court litigation brought by plaintiff relating to the underlying traffic

9   collision.  This communication was absolutely privileged and, accordingly, the undersigned

10  recommends that plaintiff's sixth claim for relief be dismissed with prejudice.

11  IV.   CONCLUSION

12  　　　　For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

13  　　　　1.　　Defendants Mary Pickett and Mercury Casualty Company's motion to

14  dismiss (Dkt. No. 8) be granted.

15  　　　　2.　　Plaintiff's fifth and sixth claims for relief be dismissed with prejudice, and

16  that defendants Mary Pickett and Mercury Casualty Company be dismissed from this action.[7]

17  　　　　These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

21  Such a document should be captioned "Objections to Magistrate Judge's Findings and

22  Recommendations."  Any response to the objections shall be filed with the court and served on

23  all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

24

25  　　[7]  As noted above, the undersigned summarily disregards plaintiff's procedurally improper motion for summary judgment, which was included in plaintiff's written opposition.  The undersigned also summarily denies plaintiff's request for the imposition of Rule 11 sanctions on the

26  Mercury Defendants and their counsel.

21

1    Failure to file objections within the specified time may waive the right to appeal the District

2    Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d

3    1153, 1156-57 (9th Cir. 1991).

4                        IT IS SO RECOMMENDED.

5    DATED:  June 8, 2011

6

7                                                                 _____

8                                                                 KENDALL J. NEWMAN
                                                                  UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26