1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARK A. GRANT,

11              Plaintiff,              No. 2:11-cv-00360 LKK KJN PS

12        v.

13   UNITED STATES OF AMERICA,          ORDER AND
     et al.,                           FINDINGS AND RECOMMENDATIONS
14
                Defendants.
15
     _____/
16

17              This action arises from a May 7, 2006 automobile accident involving plaintiff

18   Mark A. Grant, a military veteran who suffered injuries as a result of that accident, and third-

19   party motorists.  Plaintiff's claims in this case primarily concern alleged violations of his privacy

20   rights stemming from unauthorized disclosure of plaintiff's private health information by a

21   United States Department of Veterans Affairs ("VA") employee to one of the third-party

22   motorists' insurer, Mercury Casualty Company ("Mercury"), in the course of seeking recovery of

23   costs from Mercury for the medical care that the VA provided to plaintiff related to the accident.[1]

24

25   _____

26        [1]  This case proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28
     U.S.C. § 636(b)(1).

1

1    Presently pending before the court is remaining defendants United States and the

2    VA's motion for summary judgment and judgment on the pleadings, originally noticed for

3    hearing on August 30, 2012.  (Dkt. No. 80.)  In an August 17, 2012 order, the court rescheduled

4    the hearing on the motion for October 18, 2012, and set a special briefing schedule, whereby

5    plaintiff's opposition or statement of non-opposition to the motion was to be filed by August 30,

6    2012, and whereby defendants were to file any reply brief by September 6, 2012.  (Dkt. No. 82.)[2]

7    Thereafter, plaintiff filed a "release of all claims" (Dkt. No. 83), a "request for judicial notice of

8    an adjudicative fact" (Dkt. No. 85), and a "pretrial statement" (Dkt. No. 86) on August 17, 2012;

9    an objection and request that defendants' declarations in support of the motion for summary

10    judgment be stricken for lack of authentic signature (Dkt. No. 84) on August 21, 2012; a

11    "response/notice of motion and motion to dismiss" (Dkt. No. 87) on August 29, 2012; and a

12    "notice of motion and motion to dismiss" (Dkt. No. 88) on August 31, 2012.[3]  Finally, on

13    September 6, 2012, defendants filed a reply brief in support of their motion for summary

14    judgment and judgment on the pleadings, which also responded to plaintiff's above-mentioned

15    motions and filings.  (Dkt. No. 90.)

16    At the October 18, 2012 hearing, plaintiff represented himself, and attorney

17    Yoshinori Himel appeared on behalf of defendants.  The undersigned has fully considered the

18    parties' briefs, the parties' oral arguments, and appropriate portions of the record.  For the

19    reasons that follow, the undersigned recommends that plaintiff's "motions to dismiss" be denied

20

21    [2] The court also modified the pre-trial scheduling order such that the law and motion
completion deadline was continued to October 18, 2012, for the limited purpose of hearing

22    defendants' motion for summary judgment and judgment on the pleadings.  (See Dkt. No. 82.)

23    [3] Although plaintiff's motion to dismiss filed on August 29, 2012, was noticed for hearing
on October 18, 2012, plaintiff's motion to dismiss filed on August 31, 2012, was initially noticed

24    for hearing on September 13, 2012.  (Dkt. Nos. 87, 88.)  On September 4, 2012, plaintiff filed a
notice to reschedule the hearing on the latter motion for October 4, 2012.  (Dkt. No. 89.)

25    Subsequently, due to the court's unavailability on October 4, 2012, the hearing on that motion was
continued to October 18, 2012, to coincide with the hearing on the other pending motions.  (Dkt. No.

26    91.)

1   and that defendants' motion for summary judgment and judgment on the pleadings be granted.

2   BACKGROUND

3       The operative facts are primarily taken from defendants' statement of undisputed

4   facts in support of the motion for summary judgment, including the declarations and other

5   evidence cited therein.  (Dkt. No. 80-1.)[4]

6       As will be discussed in detail below, plaintiff failed to file an opposition to

7   defendants' motion addressing defendants' proposed undisputed facts or any of defendants' legal

8   arguments for summary judgment and judgment on the pleadings.  Furthermore, plaintiff failed

9   to comply with Local Rule 260(b)'s requirement to "reproduce the itemized facts in the

10  Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are

11  disputed, including with each denial a citation to the particular portions of any pleading,

12  affidavit, deposition, interrogatory answer, admission, or other document relied upon in support

13  of that denial."  E.D. Cal. L.R. 260(b).  Although the court liberally construes the pleadings and

14  filings of persons proceeding without counsel, they are required to abide by the court's Local

15  Rules and the Federal Rules of Civil Procedure, and failure to comply with these rules "may be

16  grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or

17  within the inherent power of the Court."  E.D. Cal. L.R. 110, 183(a).

18      Even if the court, in light of plaintiff's pro se status, may ordinarily have been

19  inclined to grant plaintiff an opportunity to file a supplemental opposition that complies with

20

21      [4] As noted above, plaintiff filed an objection and request that defendants' declarations in
    support of the motion for summary judgment be stricken for lack of authentic signature.  (Dkt. No.
22  84.)  To the extent that plaintiff challenges the authenticity of defendants' counsel's typewritten
    signature on his declaration and motion documents under Local Rule 131(d), defendants' counsel
23  affirmed in the reply brief that the filings in question represent his authentic work product and bear
    his authentic signature. (Dkt. Nos. 90, 90-1.)  Furthermore, to the extent that plaintiff challenges the
24  authenticity of non-attorney declarants Suzanne Will, Patricia Washington, and Darrell McDonald's
    typewritten signatures under Local Rule 131(g), defendants' counsel resubmitted each of those
25  declarations with its original handwritten signature along with the reply papers. (Dkt. No. 90-1, Exs.
    1-3.)  Accordingly, the undersigned has no reason to doubt the authenticity of the declarations and
26  filings, and denies plaintiff's request to strike them.

1   E.D. Cal. L.R. 260(b), the court finds it unnecessary in this case.  In their notice of motion,

2   defendants voluntarily provided plaintiff with a detailed warning, analogous to the type of

3   warning required in prisoner pro se cases by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998),

4   regarding the requirements to oppose summary judgment under Rule 56 of the Federal Rules of

5   Civil Procedure and Local Rules 230 and 260.  Therefore, plaintiff was well aware of the

6   applicable procedural rules and requirements.  As discussed below, plaintiff elected to forego a

7   substantive response to defendants' motion and instead sought dismissal of his own case on

8   different grounds.  Accordingly, for purposes of the motion for summary judgment, the court

9   accepts defendants' evidence and proposed undisputed facts, outlined below, as the truth.

10        Under the Medical Care Recovery Act, 42 U.S.C. §§ 2651-53 ("MCRA") and 38

11   U.S.C. § 1729, the VA asserts claims for costs of health care furnished by the VA to VA

12   beneficiaries under circumstances indicating a third party's legal liability.[5]  (Defendants'

13   Statement of Undisputed Facts Under L.R. 260(a), Dkt. No. 80-1 ["SUF"] 1; Declaration of

14   Suzanne C. Will, Dkt. No. 80-5 ["Will Decl."] ¶¶ 2, 5.)  This collection activity assists with the

15   funding of VA medical care for veterans.  (SUF 1; Will Decl. ¶¶ 2, 15.)

16   ////

17

---

18      [5] 42 U.S.C. § 2651 provides, in part, that "[i]n any case in which the United States is
    authorized or required by law to furnish or pay for hospital, medical, surgical, or dental care and
19   treatment (including prostheses and medical appliances) to a person who is injured or suffers a
    disease...under circumstances creating a tort liability upon some third person...to pay damages
20   therefor, the United States shall have a right to recover (independent of the rights of the injured or
    diseased person) from said third person, or that person's insurer, the reasonable value of the care and
21   treatment so furnished, to be furnished, paid for, or to be paid for and shall, as to this right be
    subrogated to any right or claim that the injured or diseased person, his guardian, personal
22   representative, estate, dependents, or survivors has against such third person to the extent of the
    reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for."
23   42 U.S.C. § 2651(a).  38 U.S.C. § 1729 provides, in part, that "in any case in which a veteran is
    furnished care or services under this chapter for a non-service-connected disability..., the United
24   States has the right to recover or collect reasonable charges for such care or services (as determined
    by the Secretary) from a third party to the extent that the veteran (or the provider of the care or
25   services) would be eligible to receive payment for such care or services from such third party if the
    care or services had not been furnished by a department or agency of the United States."  38 U.S.C.
26   § 1729(a)(1).

1          In the collection process as it existed in August 2009, when the alleged violation

2     of plaintiff's privacy rights occurred, billing staff at the VA's Health Information Management

3     Service ("HIMS") would initially identify health care events, i.e. treatments or services, that were

4     potentially causally related to a tort, thereby prompting staff at the VA's Regional Counsel's

5     Office to assemble a claim package.  (SUF 2-3; Will Decl. ¶¶ 4-8.)  The claim package was

6     covered by a claim notice letter and enclosed the medical bills and treatment records for the

7     identified health care events, as well as a summary of the bills.  (SUF 3; Will Decl. ¶ 8.)  The

8     medical records were included, because third parties often required substantiation of the causal

9     relationship of the tort to the health care event, and the medical records were useful in making a

10    determination of tort-relatedness.  (SUF 4; Will Decl. ¶ 9.)  To disclose VA medical treatment

11    records in the cost recovery process, the VA relied on "Routine Use number 12" in a System of

12    Records Notice published in the Federal Register, which stated:

13              Any relevant information may be disclosed to attorneys, insurance
               companies, employers, third parties liable or potentially liable
14              under health plan contracts, and to courts, boards, or commissions,
               only to the extent necessary to aid VA in preparation, presentation,
15              and prosecution of claims authorized under Federal, state, or local
               laws, and regulations promulgated thereunder.
16

17    (SUF 6; Will Decl. ¶¶ 11-16.); see also 69 Fed. Reg. 18428-02, 2004 WL 730690 (Apr. 7, 2004).

18    Because a final determination of a health event's tort-relatedness was only made after an

19    interactive process of discussion, negotiation, and possibly litigation among the tort parties, the

20    question of treatment records' tort-relatedness was viewed broadly, in a manner akin to

21    "relevancy to the subject matter."  (SUF 5; Will Decl. ¶¶ 17-19.)  However, VA staff took steps,

22    such as redaction, to protect more sensitive medical information within medical records as

23    identified by VA staff or by the VA beneficiary.  (SUF 7; Will Decl. ¶ 10.)

24          On August 5, 2009, in an attempt to recover the costs of health care which the VA

25    provided to plaintiff as a result of plaintiff's May 7, 2006 automobile accident, Darrell

26    McDonald, a paralegal in the VA's Regional Counsel's Office, sent a $17,095.69 claim notice

and package entitled "Notice of Final Lien Claim" to Mary C. Pickett, an insurance adjuster for

Mercury, the insurance company that insured one of the other parties to the automobile accident.

(SUF 9-11; Will Decl. ¶¶ 20, 22; Declaration of Darrel M. McDonald, Dkt. No. 80-9

["McDonald Decl."] ¶¶ 1, 4, 10, Exs. A-C; Declaration of Mary C. Pickett, Dkt. No. 80-8

["Pickett Decl."] ¶¶ 1-3, 7.)  Mr. McDonald knew that plaintiff suffered from #1#,[6] a sensitive

medical condition, and Mr. McDonald's practice was to redact such information from medical

treatment records before including them in a claim package.  (SUF 8-9; McDonald Decl. ¶¶ 3,

11.)  Although Mr. McDonald redacted several mentions of plaintiff's #1# condition from the

records in the claim package sent to Ms. Pickett, he missed and failed to redact a few other

references to plaintiff's #1# condition, as well as references to certain medications used to treat

#1#.  (SUF 9-10; McDonald Decl. ¶¶ 11-16.)  At the time of the disclosure, Mr. McDonald was

not aware that there was any connection between those medications and plaintiff's #1# condition.

(SUF 10-11; McDonald Decl. ¶¶ 13-16.)

   Mr. McDonald first learned of problems with the August 5, 2009 claim package

when he received a September 17, 2009 letter from plaintiff complaining about the unauthorized

disclosure of plaintiff's #1# condition in the claim package.  (SUF 11; McDonald Decl. ¶¶ 13-15,

Ex. D.)  Plaintiff's September 17, 2009 letter stated that the VA should not recover "a single red

cent" from the personal injury settlement and insisted that the VA's lien on any proceeds from

Mercury be reduced to zero.  (SUF 11; McDonald Decl. ¶¶ 17-18, Ex. D.)

   Thereafter, Mr. McDonald obtained authorization to settle and compensate

plaintiff by waiving the VA's $17,095.69 medical care recovery claim, and to prevent or remedy

harm from the disclosure by causing Mercury and Mercury's attorney to relinquish the original

and all copies of the medical records containing references to plaintiff's #1# condition.  (SUF 12-

14; McDonald Decl. ¶¶ 17-26; Will Decl. ¶¶ 22-23.)  In a letter to plaintiff dated September 18,

---

[6] The court refers to plaintiff's medical condition giving rise to the action as "#1#" pursuant to the court's June 28, 2012 protective order.  (See Dkt. No. 79.)

2009, attaching a proposed written release of all claims, Mr. McDonald stated the terms of the

potential settlement as follows:

> We agree to waive our lien in this matter in exchange for your
> signed release of all claims against the United States or the
> Department of Veterans Affairs.  This release must be notarized.
> We also agree to request that Mercury insurance and their counsel
> return all medical records to our office and delete all unauthorized
> medical information from their files.  Upon receipt of the signed
> release of all claims, we will authorize Mercury Insurance to issue
> payment directly to you with an advisement that we have waived
> our lien interests in this matter.

(SUF 13-14; McDonald Decl. ¶ 21, Ex. E.)  Subsequently, in a September 21, 2009 letter to the

VA, plaintiff stated:

> Mr. Darrell M. McDonald stated that if I sign a Release Of All
> Claims on behalf of the VA that the VA would release it's [sic]
> claim to the lien on the proceeds from my settlement.  I accepted
> Mr. Darrell M. McDonald's offer.  However that is not enough, I
> ask that the Veterans Administration take all steps necessary to
> prevent further dissemination of my #1# records and to order those
> entities who have received or stored these records on paper or
> electronically, to destroy these records.  I ask that the responsible
> VA employee or employees are prosecuted....

(SUF 14; McDonald Decl. ¶¶ 22-23, Ex. F.)

No VA employees were ever prosecuted based on the disclosure of plaintiff's

medical information, but all originals and copies of plaintiff's treatment records given to Mercury

and its counsel were returned to the VA by October 2, 2009.  (SUF 14; McDonald Decl. ¶¶ 25-

27, Exs. G & H; Will Decl. ¶ 23; Pickett Decl. ¶¶ 7-10.)  Plaintiff's treatment records were never

distributed to any other party, and Mercury had not actually reviewed plaintiff's medical records,

because plaintiff's claim had already been valued above the $15,000 insurance policy limit.

(SUF 14; Pickett Decl. ¶¶ 8-10; McDonald Decl. ¶¶ 25-27, Exs. G & H; Will Decl. ¶ 23.)

Furthermore, in an effort to improve privacy protection for VA beneficiaries and to avoid

inadvertent release of private information, the VA's Regional Counsel's Office directed the VA's

HIMS billing staff to cease sending medical records to the Regional Counsel's Office, and to

make treatment records available only through a VA Release of Information office, where staff

1  are specially trained in the handling of private records.  (SUF 16; Will Decl. ¶ 25; McDonald

2  Decl. ¶¶ 29-30.)

3              The VA never received a signed written release from plaintiff, and plaintiff

4  ultimately commenced this action against defendants on February 9, 2011.  (SUF 15; Will Decl. ¶

5  24; McDonald Decl. ¶ 28); see also Dkt. No. 1.  The VA considered plaintiff's actions to be a

6  breach of his agreement to settle his privacy claims, and therefore decided to enforce its lien and

7  recover its costs of medical care provided to plaintiff related to the May 7, 2006 automobile

8  accident.  (SUF 15; Will Decl. ¶¶ 24, 26; McDonald Decl. ¶ 28.)[7]

9              In this action, plaintiff is currently proceeding on two claims for relief.  Plaintiff's

10  first claim alleges violations of the Privacy Act of 1974, 5 U.S.C. §§ 552a et seq.  (See Amended

11  Complaint, Dkt. No. 56 ["Am. Compl."] ¶¶ 28-42.)  Plaintiff's second claim seeks declaratory

12  relief.  (Id. ¶¶ 43-71.)  In the declaratory relief claim, plaintiff disputes that certain health care

13  events billed for by the VA were in fact related to the May 7, 2006 accident, and seeks a

14  declaration of the parties' rights, obligations, and duties as to each item billed.  (Id. ¶¶ 54-55.)

15  DISCUSSION

16              PLAINTIFF'S MOTIONS TO DISMISS

17              Before proceeding to consideration of defendants' motion for summary judgment

18  and judgment on the pleadings, the court first addresses plaintiff's pending "motions to dismiss."

19  (Dkt. Nos. 87, 88.)  Both motions, which appear identical, request that the court dismiss

20  plaintiff's complaint with prejudice based on lack of subject matter jurisdiction, and deem

21  defendants' motion for summary judgment and judgment on the pleadings moot.  (Id.)

22

23          [7] For background purposes only, the VA has apparently since made some adjustments to the
    claim amount based, in part, on a determination by VA Utilization Review nurses that three health
24  care events in the August 2009 claim notice were not actually related to the May 7, 2006 automobile
    accident.  (SUF 17-20.)  It also appears that a large portion of the reduced lien has already been
25  satisfied with proceeds from the Mercury policy, that the VA anticipates having the remainder of the
    lien paid off by available funds from another insurance policy with Progressive Insurance, and that
26  the VA requested for the remaining  proceeds from the Progressive Insurance policy to be paid to
    plaintiff.  (SUF 20-22.)

1   Subsequently, defendants filed a statement of non-opposition to plaintiff's request to dismiss the

2   operative complaint with prejudice.  (Dkt. No. 92.)  Although these filings at an initial glance

3   may suggest that the case could be dismissed without further analysis, a careful review of

4   plaintiff's motions to dismiss reveals that the issue is more complicated.

5           In his motions to dismiss, plaintiff states that the action should be dismissed "due

6   to the FACT that plaintiff had/has accepted settlement of his tort claims against Federal

7   Defendants . . . pursuant to 28 USC 2672- Administrative Adjustment Of Claims thereby

8   depriving the above entitled court of subject matter jurisdiction of claims. . .."  (Dkt. No. 87 at 3;

9   Dkt. No. 88 at 3.)  Plaintiff makes similar statements in his other filings in response to

10  defendants' motion, including the "release of all claims" (Dkt. No. 83), "request for judicial

11  notice of an adjudicative fact" (Dkt. No. 85), and "pretrial statement" (Dkt. No. 86).  In those

12  filings, plaintiff requests the court to order defendants to release the VA lien proceeds to plaintiff.

13  (Dkt. No. 83 at 3; Dkt. No. 85 at 4; Dkt. No. 86 at 3.)  Thus, although plaintiff ostensibly seeks

14  dismissal of the action, he also simultaneously seeks enforcement of the prior settlement

15  agreement whereby the VA agreed to waive its medical cost recovery lien in exchange for

16  settling plaintiff's privacy claims.

17          Defendants acknowledge that the parties had an agreement to settle plaintiff's

18  privacy claims in exchange for waiver of the medical cost recovery lien, but contend that plaintiff

19  materially breached that agreement by filing this action.  Indeed, plaintiff provides no authority in

20  support of the proposition that he is now entitled to revive the prior settlement agreement, and

21  compel defendants to waive the lien, *after* suing on the privacy claim and forcing defendants to

22  expend time and resources in litigation.[8]  "When a party's failure to perform a contract obligation

23  constitutes a material breach of the contract, the other party may be discharged from its duty to

24

25          [8] Plaintiff did not sign the VA's written release of all claims until August 16, 2012, when he
    attached it to his "Release of All Claims" filed in this action on August 17, 2012.  (See Dkt. No. 83
26  at 5-7.)  To state the obvious, this was long after he had already commenced this litigation in early
    2011.  (Dkt. No. 1.)

perform under the contract."  JLG Enters., Inc. v. Excalibur Sires, Inc., 2011 WL 1103325, at *7

(E.D. Cal. Mar. 22, 2011) (unpublished) (citing and quoting Brown v. Grimes, 192 Cal. App. 4th

265, 277 (2011)).  Here, it goes without saying that plaintiff's decision to sue defendants

amounted to a total breach of the settlement agreement, which excused defendants' performance

under that same agreement, because plaintiff's commencement of litigation was totally

inconsistent with the objectives of the settlement agreement.

Accordingly, the undersigned recommends that plaintiff's motions to dismiss,

which condition dismissal of the action on enforcement of a repudiated settlement agreement, be

denied.[9]

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND JUDGMENT

## ON THE PLEADINGS

### Legal Standards

#### *Motion for Summary Judgment*

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for

summary judgment, identifying each claim or defense--or the part of each claim or defense--on

which summary judgment is sought."  It further provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[10]  A shifting burden of

proof governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund,

Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

Under summary judgment practice, the moving party

---

[9] In any event, the court cannot issue an order enforcing the previous settlement agreement, because no claim related to that settlement agreement was pled in plaintiff's operative complaint or is otherwise properly before the court.

[10]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

If the moving party meets its initial responsibility, the opposing party must establish that a genuine dispute as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary judgment, the opposing party must demonstrate the existence of a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'"  FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A party opposing summary judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

////

////

11

1   produce admissible evidence to support the fact."[11]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

2   the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

3   Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

4            In resolving a motion for summary judgment, the evidence of the opposing party

5   is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may

6   be drawn from the facts placed before the court must be viewed in a light most favorable to the

7   opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653

8   F.3d 963, 966 (9th Cir. 2011).  However, to demonstrate a genuine factual dispute, the opposing

9   party "must do more than simply show that there is some metaphysical doubt as to the material

10  facts...Where the record taken as a whole could not lead a rational trier of fact to find for the non-

11  moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citation

12  omitted).

13                    *Motion for Judgment on the Pleadings*

14           "After the pleadings are closed--but early enough not to delay trial--a party may

15  move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Because the motions are

16  functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to

17  its Rule 12(c) analog."  Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir.1989).

18  Dismissal may be granted where there is no cognizable legal theory or lack of sufficient facts

19  alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

20  (9th Cir.1990).  In considering a motion for judgment on the pleadings, the court accepts all

21  factual allegations in the complaint as true and must construe them in the light most favorable to

22  the non-moving party.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  "[A] judgment on

23  the pleadings is appropriate when, even if all allegations in the complaint are true, the moving

24

25  [11]  "The court need consider only the cited materials, but it may consider other materials in
    the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to
26  support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed.
    R. Civ. P. 56(c)(2).

1  party is entitled to judgment as a matter of law."  Westlands Water Dist. v. Firebaugh Canal, 10

2  F.3d 667, 670 (9th Cir.1993).

3  First Claim for Relief under the Privacy Act of 1974, 5 U.S.C. §§ 552a et seq.

4  As the United States Supreme Court recently explained:

5  The Privacy Act of 1974, codified in part at 5 U.S.C. § 552a,
   contains a comprehensive and detailed set of requirements for the
6  management of confidential records held by Executive Branch
   agencies.  If an agency fails to comply with those requirements "in
7  such a way as to have an adverse effect on an individual," the Act
   authorizes the individual to bring a civil action against the agency.
8  § 552a(g)(1)(D).  For violations found to be "intentional or
   willful," the United States is liable for "actual damages."
9  § 552a(g)(4)(A).

10  Fed. Aviation Admin. v. Cooper, 132 S. Ct. 1441, 1446 (2012).

11  Defendants move for summary judgment with respect to the first claim for relief

12  under the Privacy Act on the following grounds: (1) the disclosure of plaintiff's medical records

13  did not cause plaintiff any "actual damages" for purposes of the Privacy Act; and (2) there is no

14  evidence of "intentional or willful" agency action.

15  *Causation/Actual Damages*

16  Plaintiff claims that he suffered $5,000,000.00 in general damages as a result of

17  "mental distress, emotional trauma, embarrassment, humiliation, grief, anxiety, worry,

18  mortification, shock, indignity, and ordeal" attributable to defendants' violation of the Privacy

19  Act.  (Am. Compl. ¶¶ 37-38 & Prayer.)  Plaintiff further claims a total of $23,661.87 in special

20  damages, which are comprised of the $17,095.69 amount from the August 5, 2009 medical care

21  recovery claim notice, and $6,566.18 in court costs/fees from his previous personal injury action.

22  (Id. ¶ 38 & Prayer.)[12]

23  ////

24

25  [12] Plaintiff also requests that Mr. McDonald be referred for criminal prosecution under 5
   U.S.C. § 552a(i)(1).  That requested relief is not cognizable, because this court has no authority to
26  refer individuals for criminal prosecution under the Privacy Act.

13

1          With respect to plaintiff's claim for general damages, the United States Supreme

2    Court held that the term "actual damages," as used in the Privacy Act, does not include general

3    damages, i.e. damages for mental or emotional distress. Cooper, 132 S. Ct. at 1446, 1451-53,

4    1456. The Court reasoned that the Privacy Act "does not unequivocally authorize an award of

5    damages for mental or emotional distress," and accordingly, "the Act does not waive the Federal

6    Government's sovereign immunity from liability for such harms." Id. at 1456. The court noted

7    that although the federal government had undoubtably consented to be sued for damages under

8    the Act, the scope of the waiver was ambiguous, and that any ambiguity should be construed in

9    favor of the sovereign. Id. at 1448. Therefore, the Court interpreted "actual damages" to be

10   limited to special damages, i.e. "proven pecuniary or economic harm." Id. at 1452-53.

11   Accordingly, plaintiff's claim for $5,000,000.00 in general damages is not cognizable under the

12   Privacy Act.

13         As to plaintiff's claim for $23,661.87 in special damages, plaintiff failed to

14   provide evidence of a causal link between these alleged damages and the disclosure of his

15   medical records. See Houlihan v. Office of Pers. Mgmt., 909 F.2d 383, 384 (9th Cir. 1990) ("An

16   individual bringing a claim under the Privacy Act must demonstrate a causal connection between

17   the alleged violation of the Act and the harm suffered by the individual") (internal quotation

18   omitted). The $17,095.69 amount from the August 5, 2009 claim notice relates to the cost of

19   medical care plaintiff received from the VA. Simply put, plaintiff presents no evidence of a

20   causal nexus between the cost of plaintiff's medical care for the accident and damages he may

21   have suffered as a result of any Privacy Act violation.[13]  To be sure, the parties may previously

22   have agreed to settle plaintiff's Privacy Act claim in exchange for waiver of the medical care cost

23

24       [13] In one portion of the operative complaint, plaintiff suggests that he suffered the $17,095.69
     in special damages "as a result of...mental distress, emotional trauma, embarrassment, humiliation,

25   grief, anxiety, worry, mortification, shock, indignity and ordeal." (Am. Compl. ¶ 38.) If that is the
     case, the $17,095.69 is more appropriately characterized as general damages, which are barred for

26   the reasons discussed above. See Cooper, 132 S. Ct. at 1446, 1451-53, 1456.

recovery lien.  However, as discussed above, that settlement agreement was repudiated, and the medical care cost recovery claim amount cannot serve as a proper measure of damages here.

Evidence of causation is similarly lacking with respect to the $6,566.18 in court costs/fees from the underlying personal injury action.  Plaintiff alleges that he "suffered an additional loss of $6566.18 (court costs/fees) in an effort by plaintiff to prevent plaintiff from suffering further embarrassment and humiliation by foregoing negotiating with [Mercury] to reimburse plaintiff's legal expenses of $6566.18 (court costs/fees) in plaintiff prosecuting the prior lawsuit against their insured." (Am. Compl. ¶ 38.)  Again, plaintiff does not show how these "damages" resulted from any Privacy Act violation.  Plaintiff has not offered any evidence that, for example, Mercury actually coerced him into abandoning pursuit of these costs by somehow threatening or intimidating plaintiff regarding his #1# medical condition.  To the contrary, the uncontroverted facts show that Mercury's adjuster, Mary Pickett, had not even reviewed plaintiff's medical records before she returned them, because she had already valued plaintiff's claim to be above the $15,000 policy limit.  (Pickett Decl. ¶¶ 8-10.)

In any event, plaintiff offered no evidence beyond mere speculation that he would have gotten more than $15,000 from Mercury, given that Mercury settled the personal injury action at the $15,000 policy limit.  (Pickett Decl. ¶¶ 3-6, 11.)  As the United States Supreme Court noted, "if the factual context renders respondents' claim implausible - if the claim is one that simply makes no economic sense - respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." Matsushita, 475 U.S. at 587.  Plaintiff has not done so here.  Moreover, to the extent that plaintiff claims to have abandoned pursuit of these costs to prevent further embarrassment and humiliation, this claim appears to be nothing but a disguised general damages claim barred by Cooper.  See Cooper, 132 S. Ct. at 1446, 1451-53, 1456.

Therefore, because plaintiff failed to provide evidence that defendants' disclosure of plaintiff's medical records caused plaintiff any actual damages for purposes of the Privacy

1  Act, i.e., proven pecuniary or economic harm, defendants are entitled to summary judgment on

2  plaintiff's first claim for relief under the Privacy Act.[14]

3  *Intentional or Willful Agency Action*

4  In light of the court's conclusion that defendants are entitled to summary

5  judgment on plaintiff's first claim for relief under the Privacy Act based on plaintiff's failure to

6  provide evidence of any "actual damages" caused by defendants' conduct, it is not strictly

7  necessary for the court to reach defendants' additional argument that plaintiff also failed to

8  provide evidence of intentional or willful agency action.  Nevertheless, the court elects to briefly

9  address this argument, which further supports a grant of summary judgment on plaintiff's Privacy

10  Act claim in defendants' favor.

11  Defendants can be liable under the Privacy Act only if they acted in a manner that

12  was "intentional or willful."  5 U.S.C. § 552a(g)(4); Wilborn v. Dep't of Health & Human Servs.,

13  49 F.3d 597, 602 (9th Cir. 1995) (abrogated on other grounds by Doe v. Chao, 540 U.S. 614

14  (2004)); Rose v. United States, 905 F.2d 1257, 1259-60 (9th Cir. 1990).  "Willful and intentional

15  conduct is that amounting to more than gross negligence."  Wilborn, 49 F.3d at 602 (internal

16  quotation and citation omitted); see also Rose, 90 F.2d at 1260.  "An agency acts in a willful or

17  intentional manner 'either by committing the act without grounds for believing it to be lawful, or

18  flagrantly disregarding others' rights under the Act.'"  Wilborn, 49 F.3d at 602 (quoting and

19  citing Covert v. Harrington, 876 F.2d 751, 757 (9th Cir. 1989)).  It is the plaintiff's burden to

20  prove that "the government's actions, when considered in their context, were intentional or

21  

22  [14] The court recognizes that the Privacy Act provides that an aggrieved person may recover
"actual damages sustained by the individual as a result of the refusal or failure, *but in no case shall*

23  *a person entitled to recovery receive less than the sum of $1,000*."  5 U.S.C. § 552a(g)(4)(A)
(emphasis added).  However, the United States Supreme Court emphasized that "the Privacy Act's

24  remedial provision authorizes plaintiffs to recover a guaranteed minimum award of $1,000 for
violations of the Act, but only if they prove at least some 'actual damages.'"  Cooper, 132 S. Ct. at

25  1450-51.  Therefore, even assuming, for the sake of argument, that defendants violated the Privacy
Act, the court finds that plaintiff is not entitled to a minimum award of $1,000 in light of the court's

26  conclusion that plaintiff failed to show that he suffered *any* "actual damages" for purposes of the
statute.

16

willful." <u>Laningham v. United States Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (internal

quotation and citation omitted).  The Act's "intentional or willful" language "does not make the

Government strictly liable for every affirmative or negligent action that might be said technically

to violate the Privacy Act's provisions."  <u>Id.</u>

In this case, the uncontroverted facts show that it was the VA's policy, and Mr.

McDonald's individual practice, in August of 2009 to redact sensitive medical information from

treatment records before including them in a claim package for the VA's attempted recovery of

medical costs from a third party under the MCRA.  (SUF 7-9; Will Decl. ¶ 10; McDonald Decl.

¶¶ 3, 11.)  Before sending out the August 5, 2009 claim package, Mr. McDonald redacted several

mentions of plaintiff's #1# condition from the records in the claim package, but missed and

failed to redact a few other references to plaintiff's #1# condition, as well as references to certain

medications that, unbeknownst to Mr. McDonald at the time, were used to treat #1#.  (SUF 9-11;

McDonald Decl. ¶¶ 11-16.)  Thus, the evidence shows that the disclosure was inadvertent and not

willful or intentional.  <u>See</u> e.g. <u>Sullivan v. Veterans Admin.</u>, 617 F. Supp. 258, 262 (D.D.C.

1985) ("While the VA was not completely successful in deleting all the personally identifiable

references to plaintiff, its attempt to do so demonstrates that agency's consideration of and

concern for plaintiff's privacy interests").  At most, Mr. McDonald's actions can be characterized

as negligent, which falls far short of the "more than gross negligence" standard.  <u>Wilborn</u>, 49

F.3d at 602.  Furthermore, when the disclosure was discovered, defendants took remedial steps

by seeking return of all copies of plaintiff's medical records and modifying the VA's procedures

for releasing treatment records.  (SUF 14, 16; Will Decl. ¶¶ 23, 25; McDonald Decl. ¶¶ 25-27,

29-30, Exs. G & H; Pickett Decl. ¶¶ 7-10.)

Therefore, even assuming, without deciding, that defendants violated the Privacy

Act, defendants presented sufficient evidence that the violation was not "intentional or willful."

Because plaintiff has failed to come forward with evidence showing a genuine and material

dispute as to the issue of defendants' intent or willfulness, summary judgment in defendants'

1   favor is also appropriate on that additional basis.[15]

2                Second Claim for Declaratory Relief Under Medical Care Recovery Statutes

3                In the second claim for relief, plaintiff disputes that certain health care events

4   billed for in the VA's August 5, 2009 claim notice were in fact related to the May 7, 2006

5   accident, and seeks a declaration of the parties' rights, obligations, and duties as to each item

6   billed, pursuant to 42 U.S.C. §§ 2651, 2652 and 38 U.S.C. § 1729.  (Am. Compl. ¶¶ 54-55.)  As

7   noted above, defendants have made some adjustments to the claim amount based, in part, on a

8   determination that some of the health care events identified in the August 2009 notice were not

9   actually related to the automobile accident.  (See footnote 7, above.)  Nevertheless, the court

10  presumes that plaintiff intends to pursue this claim with respect to the balance of the VA's lien.

11               Defendants move for judgment on the pleadings with respect to the second claim

12  for relief.  For the reasons outlined below, the court recommends that the motion be granted.

13               First, the medical care recovery statutes under which plaintiff alleges substantive

14  violations and seeks declaratory relief, by their express terms, only provide for recovery by the

15  United States and do not authorize a private suit against the United States.  See 38 U.S.C. § 1729

16  ("Recovery by the United States of the cost of certain care and services); 42 U.S.C. §§ 2651,

17

18      [15] The court *sua sponte* considered the allegation in plaintiff's operative complaint that when
plaintiff confronted Mr. McDonald over the phone about the disclosure of plaintiff's #1#
19  information, Mr. McDonald purportedly laughed "boisterously" and was dismissive of plaintiff's
concerns. (Am. Compl. ¶ 41.)  Mr. McDonald strongly denies these allegations. (McDonald Decl.
20  ¶¶ 31-33.)  Nevertheless, plaintiff's allegations do not preclude a grant of summary judgment on
plaintiff's Privacy Act claim for several reasons. First, even if plaintiff's operative complaint is
21  deemed a verified complaint because he signed it under penalty of perjury (Dkt. No. 56), plaintiff
failed to oppose defendants' motion for summary judgment based on these allegations. Second, even
22  assuming *arguendo* that Mr. McDonald was disrespectful and dismissive of plaintiff's concerns after
the fact, this does not mean that he intentionally or willfully failed to redact plaintiff's #1#
23  information in the first place.  Indeed, that proposition seems inconsistent with the undisputed fact
that Mr. McDonald actually redacted several of the references to #1# in the disclosed treatment
24  records.  As such, plaintiff's allegations do not rise above a mere scintilla of evidence insufficient
to defeat summary judgment.  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477
25  U.S. at 252).  Third, even if the court were to find a genuine and material factual dispute with respect
to the issue of "intentional or willful" agency action, summary judgment should nevertheless be
26  granted, because plaintiff failed to show that he suffered actual damages, within the meaning of the
Privacy Act, as a result of defendants' actions.

1   2652 ("Recovery by United States").  Accordingly, plaintiff does not have standing to seek relief

2   under these statutes.  Moreover, because these statutes do not even mention a right of action

3   against the United States, sovereign immunity jurisdictionally bars plaintiff's claim.  As the

4   Ninth Circuit explained:

5           The United States is immune from suit unless it consents to waive
            its sovereign immunity.  The terms of the United States' consent to
6           be sued in any court define that court's jurisdiction to entertain the
            suit.  The doctrine of sovereign immunity applies to federal
7           agencies and to federal employees acting within their official
            capacities.  Any waiver of immunity must be unequivocally
8           expressed, and any limitations and conditions upon the waiver
            must be strictly observed and exceptions thereto are not to be
9           implied.

10  Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997) (internal quotation and citation omitted).

11          Second, to the extent that plaintiff relies on the Declaratory Judgment Act

12  ("DJA") (see Am. Compl. ¶ 45) as a basis for his declaratory relief claim, that reliance is

13  misplaced.  Title 28 U.S.C. § 2201 provides, in part, that "[i]n a case of actual controversy *within

14  its jurisdiction*,...any court of the United States, upon the filing of an appropriate pleading, may

15  declare the rights and other legal relations of any interested party seeking such declaration,

16  whether or not further relief is or could be sought.  Any such declaration shall have the force and

17  effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201(a)

18  (emphasis added).  Thus, the DJA does not enlarge the court's jurisdiction, but expressly limits it

19  to "a case of actual controversy within its jurisdiction."  Id.; see also Countrywide Home Loans,

20  Inc. v. Mortg. Guar. Ins. Corp., 642 F.3d 849, 853 (9th Cir. 2011) ("while the DJA expanded the

21  scope of the federal courts' remedial powers, it did nothing to alter the courts' jurisdiction").

22          Given that plaintiff has no standing to bring a claim under the medical care

23  recovery statutes, and that sovereign immunity also jurisdictionally bars such a claim, plaintiff

24  cannot obtain relief under those same statutes pursuant to the DJA.  Accordingly, defendants'

25  motion for judgment on the pleadings as to plaintiff's second claim for relief should be granted.

26  ////

1          Sealing of Specified Documents

2          Defendants previously agreed, in response to plaintiff's requests, to withhold from

3    filing in the public record Exhibit C (a redacted version of medical treatment records/bills from

4    the August 5, 2009 claim notice) and Exhibit F (a version of plaintiff's September 21, 2009 letter

5    to the VA with references to #1#) to the Declaration of Darrell McDonald.  (See Notice of

6    Temporary Withholding of Exhibits filed August 2, 2012, Dkt. No. 80-4.)  This agreement was to

7    provide plaintiff with an opportunity to file a motion to seal these exhibits, along with his

8    opposition to the motion for summary judgment, which plaintiff did not do.  (Id.)  Nevertheless,

9    at the hearing, plaintiff renewed his request to have these exhibits sealed, and defendants

10   stipulated to plaintiff's request.  However, the court is still required to determine whether these

11   exhibits may be appropriately sealed under applicable law.

12          Based on the "strong presumption of access to judicial records," parties requesting

13   to seal judicial records pertaining to dispositive motions bear the burden of overcoming the

14   presumption by meeting the "compelling reasons" standard.  Kamakana v. City and County of

15   Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006); Pintos v. Pac. Creditors Ass'n, 605 F.3d 665,

16   678-79 (9th Cir. 2010).  The Ninth Circuit explained that "the resolution of a dispute on the

17   merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the

18   public's understanding of the judicial process and of significant public events."  Kamakana, 447

19   F.3d at 1179 (internal quotation omitted).

20          "Under the compelling reasons standard, a district court must weight relevant

21   factors, base its decision on a compelling reason, and articulate the factual basis for its ruling,

22   without relying on hypothesis or conjecture."  Pintos, 605 F.3d at 679 (internal quotation

23   omitted).  "Relevant factors include the public interest in understanding the judicial process and

24   whether disclosure of the material could result in improper use of the material for scandalous or

25   libelous purposes or infringement upon trade secrets."  Id. at n.6.

26   ////

1    The court finds that Exhibits C and F to the Declaration of Darrell McDonald

2    meet the "compelling reasons" standard, because they contain references to #1# and other

3    sensitive medical conditions.  Disclosure of this information in the public record would be

4    unduly embarrassing to plaintiff, and disclosure of these exhibits is not necessary to the public's

5    understanding of the judicial process and legal principles involved in this action.  Therefore,

6    defendants are directed to file those exhibits under seal.

7    CONCLUSION

8    Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

9    1.  Plaintiff's objection and request that defendants' declarations in support of the

10   motion for summary judgment be stricken for lack of authentic signature (dkt. no. 84) is

11   DENIED.

12   2.  Defendants shall file Exhibits C and F to the Declaration of Darrell M.

13   McDonald (Dkt. No. 80-9) under seal pursuant to Local Rule 141 within seven (7) days from the

14   date of service of this order.

15   IT IS ALSO HEREBY RECOMMENDED that:

16   1.  Plaintiff's motions to dismiss (dkt. nos. 87, 88) be DENIED.

17   2.  Defendants' motion for summary judgment and judgment on the pleadings

18   (dkt. no. 80) be GRANTED.

19   3.  The action be DISMISSED WITH PREJUDICE.

20   4.  The Clerk of Court be directed to close this case and vacate all dates.

21   These findings and recommendations are submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

23   (14) days after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26   shall be served on all parties and filed with the court within fourteen (14) days after service of the

1  objections.  The parties are advised that failure to file objections within the specified time may

2  waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

3  Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

4                      IT IS SO ORDERED AND RECOMMENDED.

5  DATED:  October 22, 2012

6

7

8  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26